# IN THE COURT OF APPEALS OF IOWA

No. 22-0410

**IN THE INTEREST OF A.J.,**
**Minor Child,**

**C.J., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Jason A. Burns, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Caleb T. Detweiler, Iowa City, for appellant mother.

Thomas J. Miller, Attorney General and Toby J. Gordon (until withdrawal) and Ellen Ramsey-Kacena, Assistant Attorneys General, for appellee State.

Anthony Haughton, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to her child. We find the State engaged in reasonable efforts to reunite the mother with the child, termination is supported by clear and convincing evidence, and termination is in the best interests of the child. We affirm the decision of the juvenile court.

## I.     Background Facts & Proceedings

C.J. is the mother of A.J., born in 2020.[1]  The mother has a history of substance abuse. She also has a history of mental-health concerns, including borderline personality disorder, schizophrenia, anxiety, and depression.

A.J. is the mother's fifth child. The juvenile court summarized the mother's history with the four older children:

> The oldest child was removed from his mother's care after being horrifically abused and found unresponsive. [The oldest child] suffered a skull fracture, brain bleeding, and injuries "from head to toe." He has never been returned to parental care.[2]  The middle three children are currently removed from their mother's care due to physical abuse. Though their injuries were less severe than [the oldest child's] injuries, they still showed signs of physical abuse and were placed outside of their mother's care where they still remain.

When A.J. was born, the mother was involved with the Illinois Department of Children and Family Services (DCFS) for the three middle children. The children stated they had been struck with a belt. The mother had no explanation for the children's injuries. The DCFS case is still ongoing. The mother had one supervised visit per month with the three middle children.

---

[1] The parental rights of the child's father, R.T., were also terminated. He has not appealed the termination order.

[2] The mother pled guilty to misdemeanor child endangerment in Illinois in 2013 due to the injuries to the oldest child. That child was placed in a guardianship with a relative.

The mother was living in Iowa at the time A.J. was born. The child tested positive for cocaine and marijuana at birth. About two weeks after the child was born, the mother sought medical services for the child's swollen leg.[3] Medical professionals discovered the child had a total of seven factures of her right and left legs, along with a skull fracture. The injuries were determined to be the result of non-accidental trauma. The child's skull was fractured from being hit against a hard surface. The leg injuries were likely the result of being shaken. The child was removed from the mother's custody and placed in foster care.

On January 19, 2021, the child was adjudicated to be in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2021). The mother was not consistent in attending drug tests. When she did participate in drug testing, she continued to have positive tests for marijuana and cocaine. The mother had a substance-abuse evaluation in March. She began extended outpatient treatment in May, but was inconsistent in attending sessions.[4] The mother eventually quit attending the substance-abuse treatment program.

On June 8, the mother requested semi-supervised visits instead of fully-supervised visits. She also asked for the Iowa Department of Human Services (DHS) to coordinate with DCFS. The juvenile court found reasonable efforts had been made to achieve the goal of reunification. The court determined DHS had "discretion regarding visitation after consultation with the guardian ad litem

---

[3] A doctor noted that the mother and her male companion, F.L., both had a strong odor of marijuana. Later, the mother was the victim of domestic violence by F.L. The mother did not take recommended classes for domestic violence.

[4] When the mother attended sessions, she would sometimes knit, crochet, or take a nap, rather than actively participate in the sessions.

[(GAL)]." The mother was not always consistent in attending visitation. During one visit the mother became irate and was unable to calm down. The visit was ended early.

DNA testing in June showed R.T. was the father of the child. The mother identified R.T.'s sister, C.A., as a relative who could care for the child. The mother requested that the child be placed with C.A.

On October 20, the State filed a petition seeking termination of the parents' rights. The mother tested positive for marijuana in November. She started a new substance-abuse treatment program. In December, the mother filed a motion for reasonable efforts, claiming the State's efforts to consider and investigate alternatives to foster care were unreasonable. The court ordered DHS to consider placement with C.A. The court ruled that prior orders would continue.

The termination hearing was held on January 25, 2022. The mother stated that she did not have a substance-abuse problem. She stated that the only substance she used was marijuana and she had not used that since January 2021. The mother testified she did not know how the child was injured. She also stated she did not believe there was a pattern in her life where her children had unexplained injuries.

A DHS worker testified a major concern was the mother's history with her oldest child, who had very similar injuries to this child. During the CINA proceedings, the mother had eight drug patches—six were positive for illegal drugs and two were negative. The mother was also inconsistent in attending random drug testing. At the time of the hearing, DHS was still in the process of considering whether the child should be placed with C.A.

The juvenile court terminated the mother's parental rights under section 232.116(1)(h). The court found the mother's "testimony as it relates to the physical abuse of her children to be completely unbelievable and a return of the children to her care, given her history of abuse and lack of progress, would present an extraordinarily high risk of harm." The court determined that termination of the mother's parental rights was in the child's best interests. The court also found that none of the exceptions in section 232.116(3) should be applied. Additionally, the court found "reasonable efforts were made to achieve the goal of reunification and any additional efforts requested by the mother would not have helped to achieve that goal." The mother appeals the juvenile court's ruling.

## II.    Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the children. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.    Reasonable Efforts

DHS is required to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." *In re S.O.*, 967 N.W.2d 198, 209 (Iowa Ct. App. 2021) (quoting Iowa Code § 232.102(7)). The State has the burden to "show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.*

(quoting *C.B.*, 611 N.W.2d at 493). A determination of whether services offered are reasonable depends upon the circumstances of the case. *In re S.J.*, 620 N.W.2d 522, 525 (Iowa 2000).

**A.** On December 3, 2021, the mother filed a motion for reasonable efforts. The mother claimed the State did not engage in reasonable efforts to reunite her with the child because it did not promptly consider C.A., a relative, as a placement for the child. A hearing on the matter was held on December 13.[5] The court ordered DHS to consider relative placement and report to the court. On December 27, the court stated it had received the reports and it ordered that all prior orders would remain as previously set.

At the termination hearing, a DHS worker testified that information was sent to C.A. in August 2021. DHS mailed and emailed C.A. copies of a form to fill out regarding criminal background checks and that form was not returned in a timely manner. At the time of the termination hearing, DHS was still in the process of considering C.A. as a placement. The DHS worker stated she needed to consult with the GAL and the worker's supervisor before a decision could be made.

In the termination order, the juvenile court stated:

> The . . . placement request was not given to DHS for more than six months after the removal. While this may have ultimately been an appropriate relative placement, this decision was only made after the record checks and other information was gathered. This was close in time to the termination trial. The Court does not find that a relative or suitable other placement would have made any difference in the mother's efforts for reunification. The issues related to the mother's deficiencies did not stem from housing instability or a lack of appropriate interactions with the child that supervision by a relative could cure.

---

[5] A transcript from the hearing on the motion for reasonable efforts is absent from the record.

We agree with the court's conclusions. Even if DHS had moved more expeditiously to consider placement of the child with C.A., the reasons for termination of the mother's parental rights would not be cured by placement of the child with a relative. We find DHS's efforts were reasonable under the circumstances of the case. *See id.*

**B.** The mother also claims the State's refusal to reduce the level of supervision during visits was unreasonable. She contends that while she did not show perfect progress, "she did make enough progress for an opportunity to demonstrate her parental capabilities given the changes she made."

On June 8, 2021, the mother formally requested semi-supervised visits. The court entered an order on June 15, stating that reasonable efforts had been made to achieve the goal of reunification. The court stated, "DHS continues to have discretion regarding visitation after consultation with the [GAL]." On September 7, the mother again formally requested semi-supervised visitation. On September 10, the court found DHS had made reasonable efforts to reunify the family and prior orders remained in effect. The matter was also raised in the mother's motion for reasonable efforts, filed on December 3. On December 14, the court ruled that all visitation orders would remain as previously set.

Reasonable efforts "includes visitation designed to facilitate reunification while providing adequate protection for the child." *C.B.*, 611 N.W.2d at 493. The nature of DHS's efforts depends upon the best interests of the child. *In re L.T.*, 924 N.W.2d 521, 530 (Iowa 2019). The State's duty to make reasonable efforts encompasses "a visitation arrangement designed to facilitate reunification while

protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

> Visitation, however, cannot be considered in a vacuum. It is only one element in what is often a comprehensive, interdependent approach to reunification. If services directed at removing the risk or danger responsible for a limited visitation scheme have failed its objective, increased visitation would most likely not be in the child's best interests.

*Id.*

The mother did not make sufficient progress to proceed to semi-supervised visits. The mother continued to state she did not know how the child was injured and did not consistently address her substance-abuse problems. We find DHS's efforts toward reunifications were reasonable under the facts of the case.

## IV. Sufficiency of the Evidence

We follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.*

On the first issue, sufficiency of the evidence, "[w]e will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the

sections to affirm." *Id.* at 435. We affirm the termination of the mother's parental rights under section 232.116(1)(h).[6]

The mother disputes only the court's finding that the child cannot be safely returned to her care. She asserts that another caregiver caused the injuries and she no longer has that person in her life. She points out that she participated in parenting classes, attended visitation, and entered a substance-abuse treatment program.

The juvenile court noted the similarities between the injuries to the oldest child and the injuries to A.J. The court found, "either the mother is responsible for repeatedly abusing her children or she repeatedly placed them into situations where other people severely injured them." The court concluded the mother was either incapable or unwilling to protect her children. The court stated the mother's "testimony as it relates to the physical abuse of her children to be completely unbelievable and a return of the children to her care, given her history of abuse and lack of progress, would present an extraordinarily high risk of harm." We agree with the juvenile court's findings. The mother's statements that she had no idea how A.J. was injured are not credible. We find the child could not be safely

---

[6] Section 232.116(1)(h) provides for termination of parental rights when the court finds:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

returned to the mother's care. We find clear and convincing evidence to support termination under section 232.116(1)(h) in this record.

## V.     Best Interests

The mother claims termination of her parental rights is not in the child's best interests. She asserts that she has a close bond with the child, which developed during supervised visitation.

In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)." *P.L.*, 778 N.W.2d at 41. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.*

The mother has five children and all of them have been subjected to non-accidental physical harm. As the juvenile court pointed out, either the mother physically abused the children or she left them with inappropriate caregivers who physically abused the children. In either event, the mother is not capable of meeting the long-term nurturing and growth of the child due to her inability to keep the child safe from harm. We conclude termination of the mother's parental rights is in the child's best interests.

We affirm the decision of the juvenile court.

**AFFIRMED.**